**Affidavit in Support if a Search Warrant**

Your affiant, Special Agent Christopher M. Gojcz, being duly sworn on his oath, does hereby state as follows:

**Background**

1.      I am a Special Agent with the United States Secret Service ("USSS") and have been so employed for three years.  I have been assigned to the Washington Field Office.  Prior to that, I was employed as a Forensic Chemist with the Drug Enforcement Administration for three years.  Formally I was trained as a Criminal Investigator at the Federal Law Enforcement Training Center in Glynco, Georgia for eleven weeks, and as a Special Agent at the USSS's James J. Rowley Training Center in Beltsville, Maryland for sixteen weeks. My training included general law enforcement and criminal investigations, including financial investigations related to identity and document fraud, and counterfeiting.  The counterfeit training I received included the identification of counterfeit as well as the studying of manufacturing and distribution of counterfeit.  For the purpose of the application for the search warrant, I am a federal law enforcement officer under applicable provisions of the United States Code and under Rule 41(a) of the Federal Rules of Criminal Procedure.

2.      The facts set forth in this affidavit are based on my own personal knowledge and information gained through my training and experience.  During this investigation, your affiant has learned additional facts from other individuals, including other law enforcement officers and my review of documents related to this investigation.  Because this affidavit is submitted for the limited purpose of support of the application for a search warrant, it does not set forth each and every fact that I and others have learned during the course of this

investigation.

## Purpose of Affidavit

3.   This affidavit is being submitted in support of an application for a warrant search the following computer equipment which was lawfully seized on September 30, 2008 from in or around 5090 Silver Hill Court, Apt 102, Forestville, Maryland, 20747, for evidence of violations of Title 18, United States Code, Sections 471 (Counterfeiting and Forging Obligations of the United States) and 472 (Uttering Counterfeit Obligations), and Section 1028 (Identity Theft) as detailed in Attachment A hereto:

> (a) Gateway Brand Desk Top Tower Computer, Serial Number 0023430121, Manufacture date of 5/8/01; (b) Compaq Laptop Computer, Serial Number CND8230WVH; (c) Cannon All in one printer/scanner, Serial Number AHB219981; (d) IBM ThinkPad Laptop Computer, Serial Number 78-C2278; (e) Sony DVD +- R 18X, Model Number DRX-830U, Serial Number BD512849383OU_UC20703; (f) Compaq Desktop Computer, Serial Number USC3210824; (g) Removable Hard Drive by Western Digital, Serial Number WCADK3705939, identified as evidence serial numbers 115 2009 CE 1 (items 2-7) and 115 2009 CE 19 (item 1).

All these items are currently stored in the evidence vault at the United States Secret Service Washington Field Office, which is located at 1100 L Street, N.W., Suite 6000 Washington, D.C. and have remained secured in that location since their seizure on September 30, 2008.

4.   As is described more fully in this affidavit, based on your affiant's investigation to date, there is probable cause to believe that an individual living at 5090 Silver Hill Court, Apt 102, Forestville, Maryland ("5090 Silver Hill Court") and identified as Shango Taylor by Prince George's County Sheriff's Deputies has manufactured counterfeit currency and passed the produced counterfeit currency in Maryland.  Based upon the information described below, I submit that there is probable cause to believe that evidence, fruits and instrumentalities of these offenses, as described in Attachment B, will be found on the computer equipment found at 5090 Silver Hill Court, Apt. 102, Forestville, Maryland.

**Summary of Probable Cause**

5. On or about August 7, 2008, the District Court of Maryland for Prince George's County issued an Order granting a Petition – For Warrant of Restitution filed by United Investors Management Corp. at the Pennbrooke Terrace Apartments, which I have reviewed. The warrant sought to evict the tenant at 5090 Silver Hill Court, Apt 102, Harold Anderson (aka Shango Taylor ("Taylor")). The warrant stated that on July 29, 2008, the court determined that the tenant owed $892.50 plus costs, and ordered that possession of the property be restored to the plaintiff without right of redemption; that the amount due has not been paid, and that the tenant had remained in possession of the premises in violation of the judgment in the case. The court granted the petition/warrant, ordering the sheriff to "cause the Plaintiff to have again and repossess the property by putting the Plaintiff ... in possession thereof, and for that purpose to remove from the property by force if necessary, all the furniture implements, tools, goods, effects or other chattels of every description." Under the heading "Notice of Eviction," the Order notified Taylor that "it has been arranged by the Plaintiff to have you put out. You may be put out at any time after the date of issuance of this Order."

6. According to Sheriff's Deputies, the eviction process generally operates as follows. When a tenant is at least 30 days late with rent, the property manager files a Warrant of Restitution with the District Court of Maryland for Prince George's County. In addition to the Warrant of Restitution, the Judge can order a "NO RIGHT," which means that no matter how much the tenant has paid; he or she must leave the property by order of the court. The Judge who approves the Warrant of Restitution must also approve the Right of Eviction. The only party who can change the "NO RIGHT" clause is the property manger

–3–

who filed the Warrant of Restitution, and in this case the "NO RIGHT" was not waived. The Sherriff's Deputies knock on the door and show the leasee the court order for the Warrant of Restitution / Notice of Eviction. The person is told to collect clothes, valuables and any medication they may have and are instructed to step outside the residence. Sherriff's Deputies look inside the apartment looking for other people who may be inside. An eviction crew, who is hired by the management company, comes into the property and moves all of the leasee's personal effects outside of the apartment into a common area of the apartment complex. The eviction crew is supervised by Deputies to ensure there is no destruction or theft by the eviction crew or other people from the apartment complex. Any small items clothes, blankets, toys or books are placed into black plastic trash bags by the eviction crew and placed outside the apartment into a common area of the apartment complex. Larger items such as mattresses, tables, chairs and televisions are hand carried out by the eviction crew and also placed outside the apartment into a common area of the apartment complex. Once the eviction crew has moved out all personal belongings out of the property, the property manager has a locksmith change the locks and locks the unit. At this point all the property remains on the common area and becomes the owner's responsibility, for four hours. After that time the property manager is responsible to remove the property. If the property owner leaves the premises and does not return within four hours from the time of the eviction, the property is abandoned. During this time only the person on the lease, or a person with an address listed to the property, can remove the personal property. Family members, friends and other associates of the evicted party have no right to remove any property that was removed by the eviction crew from the apartment which they placed in the common area.

7. Prince George's County Sheriff's Deputies began the eviction of Taylor on September 30, 2008, at approximately 10:55 am at 5090 Silver Hill Court. Deputies encountered Taylor when the eviction began. Taylor then left the premises, purportedly to get a moving truck for his personal belongings. From the time your affiant was contacted until the time I departed the property, Taylor did not return to the property.

8. While in the apartment to serve the eviction, deputies observed in plain view what they believed to be a counterfeit currency manufacturing operation. Deputies contacted the Secret Service for assistance. When I arrived at about 11:45 am, the movers had removed all of Taylor's belongings from the apartment and placed them outside the apartment in the common area except those items in a particular room secured by deputies. Upon entering the room secured by deputies, it was immediately apparent that counterfeit currency was being manufactured on the premises. I observed in plain view varying denominations of counterfeit U.S. currency, to include several sheets of uncut counterfeit currency and cut counterfeit currency. The counterfeit notes, which included $1, $5, $10, $20, $50, and $100 notes totaled more than $12,000 in counterfeit currency. The uncut sheets of currency contained hand written notes in the margin such as "Normal/Auto," "Xerographic," "Text Photo / Photo Normal," "Sharper (Sharpest)," "Photo W/ Enhanced Glass Unnecessary on Gloss Paper," and "L Bottom." Based on my training and experience, it was immediately apparent that Taylor was using different paper, different scanning techniques – to include the use of an ink jet printer - and different printing techniques to produce the highest quality counterfeit notes. I also observed in the same room a printer, scanner, and computers, which I know from my training and experience are commonly associated with the manufacture of counterfeit U.S. Currency. In

addition, counterfeit notes were present in plain sight on the floor of the room as well as in the open drawers of the desk. A Maryland State Trooper and a Prince George's County Police Detective also located a removable hard drive and additional counterfeit notes outside the apartment on the common area, which were later turned over to me.

9.  I also observed in the room of the apartment several driver's licenses and state identification cards from different states, and credit cards, which did not bear Taylor's name, and printouts from the District of Columbia Department of Employment Services, for quarter ending June 30, 2008, which contained dozens of names and corresponding social security numbers. I also observed copies of two U.S. Treasury Checks that did not bear Taylor's name or address. Secret Service agents seized the above described items.

10. The USSS as a matter of practice maintains a searchable database which tracks the passing history of counterfeit currency. When a counterfeit note is turned over to the USSS or seized by the USSS the notes unique identifiers, including serial number are entered into a searchable database for use by Agents in investigations. Additional information regarding counterfeit notes are also input into this searchable database. These items include information provided by banks or businesses which submit counterfeit notes to the USSS. This information includes in whole or in part the business type, business contact information, geographic location of the pass or seizure, and if possible a description of the passer. All of the counterfeit notes seized from Taylor's apartment were subsequently run through the USSS Counterfeit database. The USSS Counterfeit database showed an extensive passing history of the seized counterfeit notes throughout Northern Virginia, Maryland, and the District of Columbia in 2008.

11. Based on my training and experience I know that computers are commonly

used as a means to manufacture counterfeit United States currency, counterfeit United States Treasury Checks and other counterfeit identification documents. The computer not only serves as the means of counterfeiting but also as the storage medium. The evidence commonly associated with the manufacturing of counterfeit United States currency, counterfeit United States Treasury Checks and other counterfeit identification documents are stored and located on computers. This computer evidence is found in varying types within the computer to include images, partial images, internet searches, emails, computer software and hardware. It is also common for a person involved in counterfeiting to conduct internet research in relation to paper, inks, computer software, computer hardware, images and other equipment used to manufacture counterfeit. The internet can also be used to send and receive emails containing advice, images, website links and computer software programs. It is also not common for an individual to create or attempt to create and to use stolen or created identities as a way to conceal their true identity. These stolen or fake identities can then be used for the purposes of purchasing equipment, setting up fraudulent business and bank accounts, creating addition fake identification documents for other people or for businesses, obtaining bank services and the manufacturing of additional identification documents. During the course of using the computer as the means to produce counterfeit notes, counterfeiters may attempt to conceal images, programs or other related files using password encryption or specific encryption software. In some cases they may attempt to delete the files from their computers in an effort to get ride of potential evidence of counterfeiting.

### Computer Evidence

12. Based on my experience and information that I have obtained from others

experienced in the investigation of counterfeiting, uttering counterfeit notes and identity theft, I know that evidence of these crimes may include various pieces of computer hardware, computer software, computer storage media, computer records, test print pages, printer ink and products purchased with counterfeit.  I know that when an individual uses a computer to store and reproduce financial documents, the computer will generally serve both as an instrumentality for committing the crime, and also as a storage device for evidence of the crime.  The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The computer also likely is to be a storage device for evidence of the crime because individuals involved in such counterfeiting and identity theft schemes usually maintain records and evidence relating to their crimes on their computers.  As such, the evidence obtained during the requested search may provide details regarding the files accessed from the computers, images of United States Currency, Serial Numbers and identifiers of United States Currency, alterations to United States Currency, images of Identification documents, names and social security numbers used by Taylor and images of fake identification documents.

13. Based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, to include what are commonly referred to as "thumb drives," discs, and external rewriteable drives. I also have learned that, even though computer files regarding the counterfeiting scheme may be deleted by the subjects or others, the computer system that was previously used to store those files often retains evidence of the offense. This is because files deleted by the user may still remain (in whole or in part) on the storage media, as deletion of a file may not remove that data completely from the media.

14. The analysis of electronically stored data may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file directories and the individual files that they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the warrant); examining all the structured, unstructured, deleted, and overwritten data on a particular piece of media; opening or reading the first few pages of such files in order to determine their precise contents; scanning storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic key-word searches through all electronic storage areas to determine whether occurrences of such language contained in the storage areas are intimately related to the subject matter of the investigation.

## **Conclusion**

15. Based on the above information, I submit that probable cause exists to

believe that evidence, fruits and/or instrumentalities of violations of Title 18, United States Code, Sections 471 (Counterfeiting and Forging Obligations of the United States), 472 (Uttering Counterfeit Obligations), 1028 (Identity Theft) are present inside of the computer equipment and other items described above secured from 5090 Silver Hill Court Apartment 102, Forestville, Maryland.  I therefore request that a search warrant be issued, authorizing me and other law enforcement officers to search the computer equipment secured from the premises at 5090 Silver Hill Court Apt 102, Forestville, Maryland for the evidence described in Attachment A.

                                                                                           _____
                                                                                           Christopher M. Gojcz
                                                                                           Special Agent
                                                                                           United States Secret Service

Subscribed and sworn before me this \_\_ day of November, 2008.

_____
United States Magistrate Judge